FRANK D. CELEBREZZE, JR., J.:
{¶ 1} Appellants, Andrew Philbin and Luis Sandoval, take issue with the dismissal of their appeal of a decision of the city of Cleveland Board of Zoning Appeals ("BZA"), affirming a decision of the city of Cleveland Landmarks Commission (the "Landmarks Commission"). The common pleas court dismissed the appeal for lack of subject-matter jurisdiction. After a thorough review of the record and law, this court reverses and remands.
I. Factual and Procedural History
{¶ 2} The Landmarks Commission reviewed plans for the construction of a nine-unit building in a historic district within the Ohio City neighborhood of Cleveland submitted by Vine Court Townhomes, L.L.C. ("Vine Court"). Vine Court sought a certificate of appropriateness from the Landmarks Commission. The commission imposed several requirements, but issued a certificate of appropriateness on November 7, 2016.
{¶ 3} An adjoining neighbor to the project, Carol Vang, filed an appeal to the BZA. She was the only party to file a notice of appeal, and the notice listed her as the only appellant. However, appellants participated in the hearing and offered testimony. The BZA upheld the issuance of the certificate on January 30, 2017.
{¶ 4} Following this determination, appellants filed a notice of appeal from that decision with the common pleas court on March 1, 2017. Appellees, Vine Court and the city of Cleveland (the "city"), responded by filing motions to dismiss.
{¶ 5} On April 12, 2017, the trial court granted the motions to dismiss, finding that it lacked subject-matter jurisdiction over the appeal because the BZA lacked jurisdiction to hear an appeal from a decision of the Landmarks Commission that did not include a request for a zoning variance.
{¶ 6} Following the dismissal of the appeal, appellants appealed to this court, assigning one error for review:
The trial court erred in dismissing the administrative appeal of appellants * * * as the [BZA] has subject matter jurisdiction to hear appeals from decisions regarding Certificates of Appropriateness granted or denied by the City of *676 Cleveland, Ohio Landmarks Commission.
II. Law and Analysis
{¶ 7} This appeal concerns the appropriate reviewing body for decisions of the Landmarks Commission. Appellants assert that the appropriate body is the BZA, while the city and Vine Court maintain that it is the Board of Building Standards and Building Appeals ("BSBA") where the case does not involve a variance from applicable zoning regulations.
A. Subject-Matter Jurisdiction
{¶ 8} "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." Bank of Am., N.A. v. Kuchta , 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19, citing Morrison v. Steiner , 32 Ohio St.2d 86, 87, 290 N.E.2d 841 (1972). The Kuchta court went on to distinguish subject-matter jurisdiction from the jurisdiction of a court to preside over a particular matter:
A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case. State ex rel. Tubbs Jones v. Suster , 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998) ; Handy v. Ins. Co. , 37 Ohio St. 366, 370 (1881). A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction. Pratts [v. Hurley , 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992,] ¶ 12. This latter jurisdictional category involves consideration of the rights of the parties. If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void. Id. at ¶ 12.
"The question of subject-matter jurisdiction is a question of law, subject to a de novo review on appeal." Cuyahoga Cty. Bd. of Cty. Commrs. v. Daroczy , 178 Ohio App.3d 625, 2008-Ohio-5491, 899 N.E.2d 1017, ¶ 4 (8th Dist.).
{¶ 9} Here, the Cuyahoga County Common Pleas Court has subject-matter jurisdiction over administrative appeals from the BZA. R.C. 2506.01 ; see also Kurtock v. Cleveland Bd. of Zoning Appeals , 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836, 2014 WL 1775986. The BZA heard Vang's appeal, finding that it had jurisdiction to hear an appeal from the Landmarks Commission. Pursuant to R.C. 2506.01, the common pleas court had subject-matter jurisdiction over an appeal from the BZA. Therefore, the court erred in holding that it did not. But that does not answer the question of whether the trial court erred in dismissing the appeal for lack of jurisdiction over the particular case.
B. Jurisdiction Over the Matter
{¶ 10} The Cleveland Charter, Section 76-6(d) outlines the jurisdiction of the BSBA:
The Board of Building Standards and Building Appeals shall have the power:
To approve or disapprove materials, types of construction, appliances, devices or appurtenances proposed for use pursuant to the Building Code of the City of Cleveland.
To make, amend, and repeal rules and regulations for carrying into effect all provisions of the Building Code other than those relating to zoning and to include in such rules and regulations provisions applying to specific conditions and prescribing means and methods of practice to effectuate such provisions.
To hear and decide appeals from, and to review upon motion of any member *677 of the Board, any order, requirement, decision or determination of the Commissioner of Building and Housing, or of any other administrative official or agency of the City, relating to the location, design, materials, construction, alteration, repair, equipment, use or occupancy, maintenance, removal or demolition , of any building or other structure, or any appurtenance connected or attached to such buildings or structures, regulated by the Building Code of the City of Cleveland, and any rule or regulation or amendment or repeals thereof made by said officials or agencies under the authority conferred upon them by the Building Code of the City of Cleveland , by reversing or affirming in whole or in part, or modifying such order, requirement, decision or determination, or rule, regulation, amendment or repeals thereof as in its opinion ought to be made in the premises, and to that end shall have the power of the officer or agency relative to whose ruling the action is taken; except that matters relating to zoning shall not come within the province or jurisdiction of this Board. In taking such action, the Board of Building Standards and Building Appeals may vary or modify the application of any provision of the Building Code except provisions relating to zoning, to any particular case when, in its opinion, the enforcement thereof would do manifest injustice, impose unnecessary hardship, or would be contrary to the intent and purpose of the Building Code, or public interest.
To review, upon the motion of any member of the Board, any rule, regulation or decision of the Board; but no such review shall prejudice the rights of any person who has in good faith acted thereon before it is reversed or modified.
To exercise with respect to buildings situated in the City of Cleveland the same powers as are exercised by the Board of Building Standards under the laws of the State of Ohio to the extent that it is competent for this Charter so to authorize the Board.
To formulate and submit to the City Council, changes in and amendments to the Building Code which the Board determines as desirable for the proper regulation of buildings and structures and the equipment thereof and appurtenances thereto in the City of Cleveland.
To establish rules and regulations for its own procedure not inconsistent with this section.
(Emphasis added.)
{¶ 11} Section 76-69(b) of the Cleveland Charter sets forth the jurisdiction of the BZA:
It shall be the duty of the Board of Zoning Appeals to hear and decide appeals made for exceptions to and variations in the application of ordinances governing zoning in the City of Cleveland in conformity with the purpose and intent thereof, and to hear and decide all appeals made for exceptions to and variations in the application of ordinances, or orders or regulations of administrative officials or agencies; except such as are within the jurisdiction of the Board of Building Standards and Building Appeals.
(Emphasis added.) Cleveland Codified Ordinances ("C.C.O.") 329.01(e) provides [a]ny decision or determination of the Commissioner of Building or the
Commissioner of Housing or of any other administrative officer relating to the provisions of this Zoning Code may be appealed to the [BZA] by any person deeming himself or herself aggrieved or adversely affected by such decision or determination.
*678 {¶ 12} Further, C.C.O. 329.02(d) provides,
The Board [ (BZA) ] shall hear and decide appeals from any order, requirement, decision or determination of the Director of Building and Housing or other administrative officer relating to zoning, including the refusal, granting or revocation of permits by the Commissioners. The Board shall also hear and decide all matters referred to the Board for decision, permit or other authorization, by provisions of this Zoning Code. Within its powers the Board may reverse or affirm wholly or in part or modify, the order, requirement, decision or determination appealed from, and shall make such order, requirement, decision or determination as in its opinion ought to be made under the circumstances, and to that end shall have all the powers of the officer from whose decision the appeal is taken.
{¶ 13} The Landmarks Chapter, C.C.O. Chapter 166, begins with the mission of the Landmarks Commission:
Council hereby declares as a matter of public policy that the preservation, protection, perpetuation and use of areas, places, buildings, structures, works of art and other objects having a special historical, community or aesthetic interest or value is a public necessity and is required in the interest of the health, prosperity, safety and welfare of the people. The purpose of this chapter is to:
(a) Safeguard the heritage of the City by preserving sites and structures which reflect elements of the City's cultural, social, economic, political or architectural history;
(b) Stabilize and improve property values;
(c) Strengthen the economy of the City;
(d) Protect and enhance the City's attractions to residents, tourists and visitors, and serve as a support and stimulus to business and industry;
(e) Enhance the visual and aesthetic character, diversity and interest of the City;
(f) Foster civic pride in the beauty and notable accomplishments of the past;
(g) Promote the use and preservation of historic sites and structures for the education and general welfare of the people of the City; and
(h) Take whatever steps are necessary to safeguard the property rights of the owners whose property is declared to be a landmark or is located in an area designated as a landmark district.
{¶ 14} The Second District Court of Appeals described the locus of authority for a landmarks commission:
Dayton has the power and authority to adopt zoning regulations governing the construction, modification, and demolition of buildings within the city. Among the purposes the regulations may serve and promote is the preservation of the appearance of historic structures in a condition consistent with their original period and design. [ Hudson v. Albrecht, Inc. , 9 Ohio St.3d 69, 458 N.E.2d 852 (1984) ].
Zoning regulations of this kind do not exist in a vacuum. Some mechanism of control is usually established, and a city may enact reasonable delegations of authority to its officers and agencies to interpret and apply the regulations. This is generally done, as it was done here, through a permit scheme. Authority to issue or deny a permit to take the steps concerned may be delegated to an agency so long as the agency is given the *679 necessary guidance by the city in how to exercise its discretion.
* * *
Dayton R.C.G.O. 150.230 et seq. enacts this regulatory scheme. Enforcement is delegated to a Landmarks Commission, which is authorized to grant or withhold certificates to modify historic structures.
Sherman v. Dayton Bd. of Zoning Appeals , 84 Ohio App.3d 223, 225-226, 616 N.E.2d 937 (2d Dist.1992). While the city of Dayton's landmarks ordinances are structurally different from that of Cleveland's, this case informs our analysis.
{¶ 15} The ultimate authority for the regulation of historic structures and districts flows from a municipality's home rule authority provided by Section 3, Article XVIII of the Ohio Constitution. A landmarks commission is the designated body of enforcement of the above-stated goals, which deal with how a proposed project fits within the overall character of the historic district. A board of zoning appeals is the appropriate body to oversee decisions of a landmarks commission in this regard. Indeed, that has been the practice in Cleveland as testified to in the present case by a member of the Landmarks Commission at the hearing before the BZA.
{¶ 16} Vine Court and the city argue that this case presents a unique situation where a project only implicates building materials and design-a matter wholly within the jurisdiction of the BSBA. They cite to Moore v. Bd. of Bldg. Stds. & Bldg. Appeals of Cleveland , 8th Dist. Cuyahoga No. 38360, 1979 WL 209956 (Mar. 9, 1979), for support. In that case, this court set forth the jurisdictions of the BSBA and the BZA and found that the BSBA could not hear matters related to zoning. Id. at 2-3. However, a building plan may meet all building code requirements and still fail to satisfy criteria the Landmarks Commission uses to determine whether a project is suitable for a given landmark district. See C.C.O. 161.05(b).
{¶ 17} For instance, one of the changes suggested by the Landmarks Commission was for the increased setback along West 32nd Street, the addition of trim elements between units on the exterior of the building, and horizontal breaks between floors. These requirements do not come from the city's building code, but from the Landmarks Commission's review of the plans and how they fit within the historic district.
{¶ 18} Appellees claim that the Landmarks Chapter of Cleveland's Codified Ordinances is incorporated into the city's building code. C.C.O. 161.09(e) provides that "[t]he provisions of [the Landmarks Chapter] shall be in addition to all other applicable provisions of the Building Code of the City of Cleveland." The provision does not incorporate the Landmarks Chapter into the city's building code, but acknowledges that is a separate requirement. Further, the building code does not regulate the activity at issue, and Vine Court's allusions to C.C.O. 3101.02 are unavailing. The portion cited by Vine Court provides:
The provisions of this Building Code shall apply to the location, design, materials, construction, alteration, repair, equipment, use and occupancy, maintenance, removal and demolition of every building and other structure, and to any appurtenances connected or attached to such buildings and other structures, except as such matters are otherwise *680 specifically provided for in the Charter or under other titles of the Codified Ordinances of the City of Cleveland.
However, the Landmarks Chapter specifically provides for regulation of landmark districts and buildings within the city's ordinances, i.e. are "such matters are otherwise specifically provided for in the Charter or under other titles of the Codified Ordinances of the City of Cleveland." Id.
{¶ 19} The city and Vine Court also point to the language in Section 76-6 of the Cleveland Charter and claim that it clearly indicates that the BSBA has jurisdiction over the determination of the Landmarks Commission in this case. Specifically, the reservation of authority to
hear and decide appeals from, and to review upon motion of any member of the Board, any order, requirement, decision or determination of the Commissioner of Building and Housing, or of any other administrative official or agency of the City, relating to the location, design, materials, construction, alteration, repair, equipment, use or occupancy, maintenance, removal or demolition, of any building or other structure * * *.
(Emphasis added.) Cleveland Charter, Section 76-6(d). However, appellees appear to ignore the modifying clause "regulated by the Building Code of the City of Cleveland, and any rule or regulation or amendment or repeals thereof made by said officials or agencies under the authority conferred upon them by the Building Code of the City of Cleveland * * *." Id. Whether a proposed building project adheres to the aesthetic character of a historic district is not a matter contained within the Building Code of the city of Cleveland.[1] Further, as set forth above, a building code is not the source of authority for the Landmarks Commission or its rules.
{¶ 20} Where the Division of Building and Housing has authority over a given section of the landmarks ordinances, their authority is specifically referenced. In the section of the ordinances that set forth minimum maintenance requirements, the Division of Building and Housing is specifically called on to enforce such minimum requirements. C.C.O. 161.09(f).
{¶ 21} Here, the issuance of a certificate of appropriateness was in essence a zoning determination. The property in question is a vacant lot. The determination of the Landmarks Commission necessarily involved only whether the proposed construction fits within the overall character of the historic district because there was no modification of existing historic structures.
{¶ 22} In a case where a proposed project does not require a variance from an applicable zoning regulation set forth in C.C.O. Chapter 329, but may be inappropriate for a landmark district, the considerations necessarily include whether the proposed project would adversely affect the historic and aesthetic nature of the property and the landmarks district. C.C.O. 161.05(d). This is a matter of zoning within the historic district. Indeed, Vine Court acknowledged in its letter to the BZA that the Landmarks Commission decision "focused on making certain Vine Court's proposed town homes would not change the character of the area." This is not a matter related to the building code. This is a matter with which the BZA is familiar and entrusted by the municipality to undertake. The BZA found as much in overruling Vine Court's motion to dismiss.
{¶ 23} While the Landmarks Chapter does not specify which entity has jurisdiction over an appeal from its decisions, the Landmarks Commission's decisions derive, *681 in part, from the municipality's zoning authority, which is the province of the BZA. The city is free to specify in its ordinances to which board an appeal from a decision of the Landmarks Commission should be taken. The fact that it does not leads to situations where aggrieved property owners and project developers are left without meaningful review of the decisions of the Landmarks Commission if they guess wrong in attempting to divine to which board they should appeal.
{¶ 24} A member of the Landmarks Commission testified before the BZA, and stated that, traditionally, the BZA has heard appeals from Landmarks Commission decisions. The city and Vine Court have not set forth a sound justification for bifurcating jurisdiction between various boards of review where a zoning variance is not requested, because the decision draws its essence from zoning considerations, and not from the city's building code. The city's charter does not offer that justification where decisions regarding the preservation of historic districts are akin to zoning determinations.
{¶ 25} Here, the common pleas court accepted the argument that because no variance was requested, the BZA was not the appropriate body to hear the appeal. Even where no variance is sought, the BZA still has the authority to review decisions about whether a project complies with the existing character of the historic district. The common pleas court did not address the merits of the appeal before it. Therefore, we must remand for the court to consider the merits of the appeal. Lycan v. Cleveland , 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 21.
III. Conclusion
{¶ 26} The common pleas court erred when it determined the BZA, and by implication of the court itself, did not have jurisdiction to hear the appeal before it. The BZA is the appropriate entity to review decisions of the Landmarks Commission. However, this court makes no ruling on the merits of the appeal. That decision, in the first instance, must be made by the common pleas court.
{¶ 27} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
KATHLEEN ANN KEOUGH, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR

The city uses the building codes of Ohio. C.C.O. 3111.01; C.C.O. 3121.01; C.C.O. 3101.08. The Residential Building Code of Ohio for One-, Two-, and Three-Family Dwellings, Section 113, specifically exempts historic buildings from several aspects of the building code.